UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

RONNIE C. CASSIDY,

                Plaintiff,

v.                                                Case No. 5:08-cv-331-Oc-GRJ

MICHAEL J. ASTRUE, Commissioner of Social
Security,

                Defendant.
_____/

## ORDER

Plaintiff appeals from a final decision of the Commissioner of Social Security ("the Commissioner") denying his applications for a period of disability, disability insurance benefits, and supplemental security income. (Doc. 1.) The Commissioner has answered (Doc. 11), and both parties have filed briefs outlining their respective positions. (Docs. 16 & 17.) For the reasons discussed below, the Commissioner's decision is due to be **AFFIRMED**.

## I. PROCEDURAL HISTORY

On October 7, 2003, Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income, alleging a disability onset date of August 26, 2003. (R. 35-37, 206-08.) Plaintiff's applications were denied initially and upon reconsideration. (R. 18-21, 29-30, 33-34, 195-204.) Thereafter, Plaintiff timely pursued his administrative remedies available before the Commissioner and requested a hearing before an Administrative Law Judge ("ALJ"). (R. 28.) The ALJ conducted Plaintiff's administrative hearing on November 15, 2005. (R. 294-320.) The ALJ issued a

decision unfavorable to Plaintiff on March 30, 2006. (R. 8-16.) Plaintiff's request for review of the hearing decision by the Social Security Administration's Office of Hearings and Appeals was denied. (R. 4-6.) Plaintiff then appealed to this Court. (Doc. 1.)

## II. **STANDARD OF REVIEW**

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla in that the evidence must do more than merely "create a suspicion of the existence of [a] fact," and must include "such relevant evidence as a reasonable person would accept as adequate to support the conclusion."[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient

---

[1] *See* 42 U.S.C. § 405(g).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Richardson v. Perales, 402 U.S. 389, 401(1971); Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982)); *accord* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; *accord* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding court must scrutinize entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding court must also consider evidence detracting from evidence on which Commissioner relied).

reasoning to determine that the Commissioner properly applied the law.[5] The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, he is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in Title 20, Part 404, Subpart P, Appendix 1 of the Code of Federal Regulations, he is disabled.[11] Fourth, if a claimant's impairments do not

---

[5] Keeton v. Dep't Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. See Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] Id. § 404.1520(c).

[11] Id. § 404.1520(d).

prevent him from doing past relevant work, he is not disabled.[12] Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[17] In a situation where both exertional and non-exertional impairments are

---

[12] 20 C.F.R. § 404.1520(e).

[13] Id. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); see also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] Doughty, 245 F.3d at 1278 n.2.
> In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.

Id. (internal citations omitted).

[16] Walker, 826 F.2d at 1002. Once the burden shifts to the Commissioner to show that the claimant can perform other work, the grids may come into play. Id.

[17] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Walker, 826 F.2d at 1003 ("The
(continued...)

found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the grids as a framework to evaluate vocational factors so long as the ALJ introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[20] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[21]

### III. SUMMARY OF THE RECORD EVIDENCE

Plaintiff was forty seven (47) years old at the time of the ALJ's decision on March 30, 2006. (R. 11-16, 298.) He has a tenth grade education, and has previous work experience as a truck driver, electrician, and automotive parts salesman. (R. 42, 47.) Plaintiff contends that he has been unable to work since August 26, 2003 due to coronary artery disease, degenerative disc disease, shortness of breath, chronic obstructive pulmonary disease, and obesity. (R. 35, 41.) Plaintiff is insured for benefits through December 31, 2008. (R. 38.)

---

[17](...continued)
grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[18] Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987).

[19] Wolfe v. Chater, 86 F.3d 1072, 1077-78 (11th Cir. 1996).

[20] See id.

[21] See Doughty v. Apfel, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

*Medical Evidence*

The medical evidence of record encompasses medical treatment Plaintiff received as early as July 2001 and as recent as July 2005. These medical records reveal Plaintiff's primary complaints during this time frame to be chronic back pain, shortness of breath, and episodic chest pain.

## Chronic Back Pain

In August 2003, Plaintiff sought treatment with Dr. Troy Lowell, an orthopedist, to address his complaints of chronic back pain. Although Plaintiff complained of constant back pain ranging between mild to severe in intensity, examination revealed only mild tenderness of Plaintiff's thoracic spinal muscles and an unremarkable neurological exam. Dr. Lowell further observed that Plaintiff walked with a normal gait and had normal range of motion in his lumbar spine. Straight leg raise testing was negative bilaterally. (R. 189-90.) X-rays revealed mild degenerative changes, mild scoliosis, and no other abnormalities. Dr. Lowell diagnosed Plaintiff with chronic degenerative disc disease and recommended weight loss and physical therapy. (R. 189-90.) Although Dr. Lowell advised Plaintiff to consider a different profession, he opined that Plaintiff was "not presently disabled." (R. 188.)

Between November 2004 and July 2005, Plaintiff saw his treating physician, Dr. Michael Borelli, on a monthly basis. (R. 229-41.) Dr. Borelli's treatment notes reference Plaintiff's subjective complaints of chronic back pain. In June 2005, Dr. Borelli sent Plaintiff for an x-ray of his lumbar spine which revealed mild degenerative changes. (R. 228.)

**Shortness of Breath**

Although Plaintiff's treating physicians noted Plaintiff's history of asthma and prescribed Albuterol and Advair for treatment of his subjective complaints of breathing difficulties, most of their examinations revealed no wheezing or other respiratory abnormalities. (R. 179-80, 184, 241.)

In July 2001, Plaintiff saw pulmonologist, Dr. Purushottam Mitra, for an assessment of a mass that diagnostic imaging detected in his right lung. Dr. Mitra noted Plaintiff's subjective complaints of losing his breath with minimal physical exertion. Although Dr. Mitra's physical examination of Plaintiff was unremarkable, pulmonary function testing revealed a mild obstruction. (R. 107-09.) Dr. Mitra performed a bronchoscopy and biopsy to assess the mass. (R. 93.) According to the biopsy results, Dr. Mitra identified the mass as benign. (R. 93.)

**Episodic Chest Pain**

Despite Plaintiff's allegation of coronary artery disease, all of the medical evidence of record demonstrates that Plaintiff's complaints of chest pain were ultimately found to be of non-cardiac origin.

Plaintiff underwent a stress test in March 2003 following an abnormal EKG. The test revealed an ejection fraction of 43% and abnormal function in the left ventricle of Plaintiff's heart suggestive of obstructive coronary disease. (R. 119.) The abnormal test results prompted Plaintiff to undergo a heart catheterization. (R. 119, 127-28.) The heart catheterization was performed a few days after the stress testing and revealed normal coronary arteries, a mild abnormality in Plaintiff's left ventricle, and an ejection fraction

7

of 40%. The cardiologist, who interpreted the results, opined that the stress test was a "false positive" result and diagnosed Plaintiff with mild non-obstructive heart disease. He attributed Plaintiff's ventricular dysfunction to his obesity and recommended weight loss and pharmacological management. (R. 126, 129-30.)

Between August 2004 and June 2005, Plaintiff reported to the emergency room on more than one occasion with complaints of chest pain. (R. 234, 240, 242, 253.) Each time, Plaintiff was diagnosed with atypical/non-cardiac chest pain and instructed to lose weight and continue pharmacological management with his regular physician. A cardiac evaluation performed on Plaintiff in June 2005 was reportedly normal. (R. 231.)

### Depression

According to the medical evidence of record, Plaintiff never sought treatment for any mental health complaints. Plaintiff alleged depression for the first time at his hearing before the ALJ. (R. 317-20.) Indeed, the only evidence that Plaintiff was suffering from depression during the relevant time period is his subjective testimony. According to Plaintiff's testimony, he had never seen a mental health care provider for treatment of his depression. (R. 317.) Plaintiff complained of experiencing "bouts of depression sometimes." (R. 318.) He testified that his wife informed him that she had noticed that he gets moody at times and that he periodically appears depressed for approximately three to four months a year. (R. 319-20.) Plaintiff testified that his depressed mood is usually tied to financial stress he is experiencing. (R. 319-20.) Plaintiff did not report taking any anti-depressants or psychotropic medications.

## Consultative Examination

In December 2003, Dr. Lance Chodosh performed a consultative examination of Plaintiff at the request of the Social Security Administration. Plaintiff complained of chronic back pain which he reported was made worse by most activities including sitting, standing, and pulling. Plaintiff also complained of shortness of breath with exertion and occasional chest pain/pressure. According to Plaintiff, his back pain and shortness of breath limit him to walking limited distances; standing for up to ten minutes at a time; sitting for moderate lengths of time; lifting up to fifteen pounds. Plaintiff also advised that he had a limited ability to stoop and was unable to rise from a squatting position.

Dr. Chodosh noted that Plaintiff had been hospitalized in March 2003 with chest pain – but a heart attack was ruled out and Plaintiff was subsequently diagnosed with an enlarged heart. He reviewed an x-ray of Plaintiff's spine taken in August 2003 which revealed mild degenerative changes, minimal scoliosis, and no other abnormalities.

Dr. Chodosh's physical examination revealed Plaintiff to be a "very obese, but reasonably muscular man." Dr. Chodosh noted Plaintiff's affect, speech, and thought content were all normal. (R. 150-51.) Neurological examination revealed no abnormalities. Notably, Plaintiff demonstrated normal manual dexterity with full grip strength and no impaired sensation. (R. 152.) Plaintiff's lungs were clear, with slightly distant breathing sounds and a normal breathing pattern. (R. 152.) Dr. Chodosh conducted pulmonary function testing as part of the physical examination. (R. 154-58.) Heart sounds were reportedly normal. Examination of Plaintiff's spine revealed no deformity, tenderness, or paraspinal muscle spasm. Plaintiff had normal range of motion

9

in his neck, shoulders and wrists bilaterally, and he demonstrated slightly reduced range of motion with extension of his lumbar spine and adduction of his hips which Dr. Chodosh attributed to Plaintiff's obesity. (R. 152, 159-60.) Straight leg testing was normal. Dr. Chodosh observed Plaintiff to have a normal gait and balance but an inability to rise from a squatting position. (R. 152.)

After reviewing medical records from Plaintiff's treating orthopedist and the results of Plaintiff's August 2003 spinal x-ray, and upon finding "no objective evidence of major back or spinal impairment on examination," Dr. Chodosh opined that Plaintiff had chronic diffuse back pain of uncertain etiology. With respect to Plaintiff's complaints of having difficulty breathing, upon finding "no obvious signs of asthma" during his examination of Plaintiff, Dr. Chodosh attributed the complaints to Plaintiff's significant obesity. (R. 153.) In rendering this opinion, Dr. Chodosh noted that Plaintiff's history of having a lung mass is of "doubtful significance." As for Plaintiff's complaints of chest pain, Dr. Chodosh acknowledged Plaintiff had a history of *possible* coronary artery disease and cardiac enlargement but opined that his "current chest pains are very nonspecific, and do not particularly suggest angina." (R. 153.)

In view of his objective findings, Dr. Chodosh found Plaintiff to have no limitations with respect to his ability to communicate with and relate to others. Although he found Plaintiff incapable of squatting, kneeling, or crawling, he opined that Plaintiff could stoop occasionally, lift and carry moderate loads, handle objects of moderate size and shape, walk and stand normally—but not for extended periods of time, and sit "in a normal fashion." (R. 153.)

**Non-examining State Agency Physicians' Assessments**

In January 200, Dr. J. Vergo Attlesey, a non-examining state agency physician, reviewed Plaintiff's file to assess Plaintiff's physical residual functional capacity. In rendering his opinion, Dr. Attlesey noted that Plaintiff had been diagnosed with non-cardiac chest pain and that a heart catheterization revealed non-ischemic cardiomyopathy and a 40% ejection fraction. He also took into consideration observations made by Plaintiff's treating orthopedist that a spinal x-ray revealed only mild degenerative changes, straight leg raise testing was normal bilaterally, and Plaintiff's manual strength and grip were intact. In addition, Dr. Attlesey noted the orthopedist's opinion that, although he thought Plaintiff should consider a different profession, Plaintiff was "not presently disabled." Dr. Attlesey also considered Plaintiff's pulmonary function test results from December 2003. Dr. Attlesey found Plaintiff capable of lifting and/or carrying fifty pounds occasionally and twenty-five pounds frequently; standing and/or walking for about six hours in an eight hour workday; sitting (with normal breaks) for about six hours in an eight hour workday; and pushing / pulling without limitation. He further found Plaintiff to be limited to climbing, stooping, and crouching occasionally, and balancing, kneeling, and crawling frequently. According to Dr. Attlesey, Plaintiff was obese with mild asthma and mild degenerative joint disease and his reported symptoms were greater than would be expected. (R. 161-68.)

In April 2004, a second non-examining state agency physician, Dr. Reuben Brigety, reviewed Plaintiff's file to assess Plaintiff's physical residual functional capacity. Dr. Brigety's opinion mirrored that of Dr. Attlesey's with the exception that Dr. Brigety

found Plaintiff capable of lifting and/or carrying only twenty-five pounds occasionally and fifteen pounds frequently. (R. 169-77.)

***Plaintiff's First Application for Benefits***

On March 30, 2006, the ALJ issued a decision in which he found Plaintiff had not been under a "disability" due to coronary artery disease, degenerative disc disease, shortness of breath, chronic obstructive pulmonary disease, and obesity for the time period commencing on August 26, 2003 and ending on the date of the decision.

In reaching this decision, the ALJ reviewed the record, including Plaintiff's testimony, and medical records from several health care providers, and determined that although Plaintiff suffers from several "severe" impairments including: restrictive pulmonary function secondary to obesity, degenerative disc disease of the spine, and non-cardiac chest pain, Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the impairments listed in Title 20, Part 404, Subpart P, Appendix 1 of the Code of Federal Regulations. (R. 13.)

The ALJ then found that Plaintiff retained the RFC to perform the exertional demands of the full range of sedentary work. (R. 13.) After finding that Plaintiff could not perform his past relevant work as a truck driver, automotive parts salesman, and/or electrician, the ALJ applied Rule 201.18 of the Medical-Vocational Guidelines (the "grids")[22] which directed a finding that Plaintiff was "not disabled." (R. 15-16.)

---

[22] 20 C.F.R. § 404, subpt. P, app. 2.

***Plaintiff's Second Application for Benefits***

In his brief, Plaintiff represents that he filed a second application for a period of disability, disability benefits, and supplemental security income while his appeal in this case of the ALJ's March 2006 decision was pending. According to Plaintiff, he alleged the same medical conditions and submitted the same evidence as he did in support of his first application but with a new alleged onset of disability date. Plaintiff's second application made its way through the administrative proceedings and, ultimately, a hearing was held on August 18, 2008 before the same ALJ that considered (and denied) Plaintiff's first application for benefits. On October 10, 2008, the ALJ issued a fully favorable decision finding Plaintiff "disabled" as of April 14, 2006.[23]

In reaching his October 2008 decision, the ALJ found that Plaintiff suffers from cardiomyopathy, a spine disorder, obesity, a pain disorder, and a depressive disorder. (Doc. 16-2 p. 7.) Although the ALJ found these impairments to be severe, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the impairments listed in Title 20, Part 404, Subpart P, Appendix 1 of the Code of Federal Regulations. (Doc. 16-2 p. 7.)

The ALJ then found that Plaintiff retained the RFC to perform the exertional demands of sedentary work subject to the additional limitation that Plaintiff "is unable to sustain the functions involved in this work on a regular and continuing basis due to pain, fatigue and social functioning difficulties." After finding Plaintiff to be incapable of performing his past relevant work, the ALJ further found that there were no jobs that

---

[23] The ALJ's written decision, dated October 10, 2008, was attached to Plaintiff's Brief as an Exhibit. (Doc. 16-2 pp. 3-8.)

exist in significant numbers in the national economy that Plaintiff can perform because the unskilled sedentary occupational base was significantly eroded as a result of Plaintiff's inability to meet the demands of basic work related activities on a sustained basis. (Doc. 16-2 pp. 4 & 8.) Accordingly, the ALJ found Plaintiff has been under a disability since his alleged onset of disability—April 14, 2006.

## IV. **DISCUSSION**

Plaintiff raises only one issue in his appeal. Plaintiff argues that the ALJ's March 2006 decision was arbitrary, capricious, and not supported by substantial evidence because there was no appreciable difference between his medical condition on March 30, 2006—the date of the ALJ's first disability determination—and April 14, 2006—the date of Plaintiff's onset of disability as alleged in Plaintiff's second application for benefits, which resulted in a fully favorable determination that Plaintiff was "disabled" as of April 14, 2006. Thus, the only challenge to the March 2006 decision is based upon the fact that the Plaintiff was found to be disabled in the second application. Other than the difference between the results of the two applications, Plaintiff does not challenge the sufficiency of the ALJ's decision on any other grounds.

In response, the Commissioner argues that the ALJ's March 30, 2006 decision was supported by substantial evidence. In addition, and contrary to Plaintiff's contention that the second application for benefits did not include new medical conditions and was based upon the same evidence as the first application, there was additional medical evidence that was submitted in support of Plaintiff's second application—none of which existed at the time the ALJ rendered his first decision in March 2006, and most of which

describes Plaintiff's medical condition *after* March 31, 2006, the date of the ALJ's first decision.

For example, Plaintiff's treating physician, Dr. Borelli, prepared a medical source statement in August 2008 in which he opined that "[Plaintiff's] pain or other symptoms have been severe enough to constantly interfere with the attention and concentration needed to perform even simple work tasks." (R. 16-2 p. 6.) This medical opinion is in stark contrast to Dr. Lowell's August 2003 opinion that although Plaintiff suffered from chronic degenerative disc disease, Plaintiff was "not presently disabled."

Also in the second application, the ALJ was presented with additional and new medical evidence that Plaintiff injured his neck in a May 2007 motor vehicle accident, which exacerbated Plaintiff's pre-existing spine disorder. Further, in the second application the ALJ addressed medical evidence documenting that Plaintiff now has numbness in his arms and hands, has decreased grip strength and that the conditions had become significant enough to require scheduled neck surgery. This evidence is different from the medical evidence in the first application in which Dr. Chodosh observed in December 2003 that Plaintiff's manual dexterity and grip strength were normal.

With respect to Plaintiff's complaints of chest pain, the medical evidence of record as of March 2006 (the date of the decision on the first application) demonstrates that Plaintiff's examining physicians believed his symptoms stemmed from a non-cardiac origin. However, in the second application for benefits, Plaintiff apparently produced medical records demonstrating that his condition subsequently deteriorated to

the point that he needed to have a pacemaker implanted in the summer of 2007 due to his "active congestive heart failure."

As for Plaintiff's allegation of depression, in the second application an August 18, 2008 medical opinion was presented prepared by Dr. Bernard-Pantin, Plaintiff's treating psychiatrist, in which the treating psychiatrist opined that Plaintiff suffered from depression and that the Plaintiff had marked limitations in social functioning due to depression. The record in the first application does not include any medical evidence that Plaintiff had even been diagnosed with depression let alone that Plaintiff had functional limitations from depression.

In sum, the additional medical records relied upon by the ALJ in the second fully favorable decision demonstrated that Plaintiff had significant developments in his medical condition after March 2006, which combined to impair Plaintiff's ability to perform sedentary work for sustained periods of time. The Court's review in this case is limited to an examination of whether there was substantial evidence to support the challenged decision and not whether medical events and medical conditions post-dating the decision support Plaintiff's claim. Because Plaintiff does raise any challenge to the decision of the ALJ - other than contrasting it to a subsequent fully favorable decision based upon new and additional medical evidence - the ALJ's March 2006 determination that Plaintiff was capable of the full range of sedentary work from August 2003 through March 2006 was not arbitrary and capricious and was supported by substantial evidence.

## V. CONCLUSION

In view of the foregoing, the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter final judgment in favor of the Commissioner consistent with this Order and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on August 19, 2009.

*/s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

Copies to:

All Counsel